The next case on our call this morning is Agenda No. 14, Case No. 104922, Santos-Alvarez et al. v. Maria Pappas. Mr. Rasack, are you ready to proceed? Good morning, Your Honors. Michael Rasack. I'm here on behalf of the plaintiffs' appellants in this matter. The plaintiffs' appellants in this matter are the people who were property owners in Cook County. They received a tax bill from the treasurer's office and paid that tax bill. The problem that arose, of course, is that in this world, tax bills are not always only paid by you. The most frequent situation is the situation where your mortgage holder, the bank or the financial institution, which loaned you the money to buy your home, tracks your property tax and pays the tax itself. It does that independently of the property owner of the taxpayer. You mean, well, surely the taxpayer, I mean, the homeowner is paying the taxes. It's just being escrowed. Exactly. That's exactly where I was headed. So you're paying your principal and interest plus tax. You may pay insurance. Exactly. I mean, they're not just gratuitously paying people's taxes. No, they are not. That was going to be my next sentence, just to explain that to make sure there's no question about that. When the property owner, in fact, pays the mortgage institution, that check normally includes principal, interest, property taxes and so on. That's escrowed. And the mortgagee keeps track independently of what your property taxes are so that even though the property owner who receives the bill pays the taxes, they're also being paid independently on behalf of the property owner by the financial institution. And the problem, of course, is that most property owners do not really understand that process. They write a check to their mortgage company once a month, and to them they've paid their mortgage. They really are not aware of the fact that their property taxes are being paid by the mortgage company. And in Cook County, at least until this lawsuit was filed in 2005, nobody told the property tax owner that that was being done. After this lawsuit was filed, the process was changed. And we've got an example of that attached to our complaint. After the lawsuit was filed, the treasurer in Cook County, when they receive these double payments, notifies the taxpayer, by the way, your bill has already been paid. And there's even new litigation or new statutes now that require the payor, the financial institution, to tell me, by the way, we've paid your bill, to try and avoid this problem. Mr. Rasick, it seems to me that your argument is that the statutory provision at issue only deals with premature or double assessments. Isn't that with the five-year statute limitation? And that's the problem that we have, is that's what the county has relied upon. I guess what I'm having trouble getting over is, it just doesn't seem like it would be the legislature's intent to grant a statutory right of relief only to those taxpayers who overpay due to a premature assessment or double assessment. Isn't it more likely and maybe even clearer from the legislative comment that the legislator was allowing a refund to anyone who overpays, which has happened in this case, but providing a five-year statute of limitations in those instances? Because that's what they want to get over is the five-year statute of limitations, right? Exactly. And the problem we have here is that in our situation in Cook County, if the taxpayer goes back to the treasurer, within five years you can get the money back. But if it's more than five years, the treasurer takes the position that after five years, I have a right to keep that money. Our argument is not centered entirely upon 20-175, the statute that Your Honor talks about. But if that was the legislature's intent, was to protect the taxpayer in this situation, our position is they didn't do it. We've got the one comment by one legislator that they were talking about overpay taxes. And the problem I think that occurred was, if you read the legislative history, initially there were two separate amendments offered. One was adopted separately. That was 21-60. That was the amendment that cured the situation where a property tax owner pays his first assessment and then because of some other event, it turns out that the first assessment is more money that would be owed for the whole year. And he couldn't get that money back before. So 21-60 was separately passed to protect the taxpayer in that situation. For some reason, this other separate legislative proposal, instead of being passed as a separate section like 21-60 was, they tried to do something to 20-175. And our position is that when they did that, no matter what they intended to do, they didn't do it. Because if you read 20-175, it talks about property that's twice assessed or assessed before it becomes taxable. And then it goes on to talk about the things that affect that. And if Your Honor is correct, if the legislature wanted overpaid taxes like this to be affected, in the third line it would have to say, if any property twice assessed or assessed before taxable and the owners who assessed taxes have been paid at sale otherwise, or if taxes have been overpaid by the same claimant. But it doesn't read that way. So your position is really a statutory construction one and saying the best evidence of legislative intent is the words themselves. And you say that the grammatical structure supports that this statute doesn't apply in this situation. That's exactly correct. As I was taught English by some very strict nuns, and looking at what's in here. Can I see your knuckles just to make sure? I was a very good student, Your Honor.  You have to read the statute. Now we know what the one legislator said, but we don't know what the other legislators were thinking. And evidence that this statute, 20-175, is meant to be limited is supported by two things. One is this incredibly long history of very strictly construing tax payment statutes and tax refund statutes and everything else. The other point is that if 20-175 now covers all kinds of overpayments, which is the county's position, a number of things become immediately redundant. Because everything is an overpayment if it's going to be given that broad of a term. Assessments, if my assessment's too high, I overpay. If the levy was illegal, I've overpaid because I never should have been paid. If it's been twice assessed for the same year, which is in the same provision, it's overpaid. 21-60, where my first installment turns out to be more than the entire year's taxes, it's an overpayment. Is it your understanding, Mr. Rasak, that Cook is the only county in the state that would employ the five-year statute of limitations? It is. It is. And that was alleged in our complaint. As a matter of fact, I may have the number. Fifty-one of them automatically send them right back to you, and almost all the others credit your first payment to your next year's taxes. And that really goes back to the real point that we have here is that none of this should apply in the first place because these are not tax payments. That's really the heart of our argument. These are payments outside of the property tax code because when the second payment hits the desk of the treasurer, the treasurer knows it's not a tax payment. A payment is a payment of an obligation. I think that's the Leveroni case and another federal district court case. When you pay something, you pay an obligation. When the second check is written or the second wire transfer occurs, it's actually a wire transfer from the financial institutions in bulk, there's no obligation. And the treasurer, now the person paying the taxes thinks they're writing a tax payment, but the recipient, the treasurer, knows it's not a tax payment. And the treasurer has only authority under Chapter 55, it's 5-3-10005. The treasurer only has authority to keep money that the treasurer, that he or she is authorized to take and receive by law. And nothing in the law authorizes a treasurer to take more money. Do you have any authority for that kind of a definition of a tax payment? In the Leveroni case that we have, Your Honor, it's stated at page 32 of our brief. It says a payment is something that discharges an obligation. Well, this obligation was discharged when the first payment was recorded by the treasurer. The second payment, there was no obligation, and you cannot discharge an obligation that doesn't exist anymore, which is probably why the other counties give the money back. Mr. Rastak. I'm sorry. The appellate court, in its opinion, and I think your opponent, both suggest that if this statute is not available to people who are in the position of your clients, short of the statute of limitations, but if this statute is not available, there will be no way for people who have mistakenly paid this money to recover it because there is no statutory authorization. If I am wrong, then that's correct. If I am correct, if my position, if our client's position is correct, and we are able to, and these are not tax payments, and they're not subject to the voluntary payment doctrine, well, then we can get this money back. But there is no statutory vehicle for you to get it back. No, there is not. There is not a specific statutory vehicle to let us get money back that we never should have paid in the first place. You are arguing that some of it. I'm sorry. If we move then to the On Claims Property Act, if we move to unjust enrichment conversion, those are the remedies that we say are available because these are not tax payments. But if you're successful and it turns out not to be available, some other court rules that it's not, then everybody who is protected by this bill would no longer be protected by it because they wouldn't be involved with tax payments. Yeah. It would end up to be a scenario that's right. If I'm wrong, if my position is wrong, it is going to be what it always has been, a more limited recovery, and the legislature would have to go back and we would say, do it right. Whether they intended to do it or not, I quoted Justice Connick because he had, I thought, just a good statement. You know, you can't read words into the statute if the legislature made a mistake. If they made a mistake, we're pretty much all, to use the vernacular, stuck with it until it's fixed, and we think the language here is clear. But the real problem that we go back to is, were these tax payments? How can it be a tax payment if there's no tax? That's the grim. Getting back to what Justice Fitzgerald was saying, though, if we rule, as you would like us to rule, that these weren't tax payments, you're saying that this situation is then protected forever? Is that your position, that you don't have to come within the five-year statute and could still bring such a common law action anyway? Correct, except that you would then be, arguably, and I know what the response is, even the common law remedies that we would have on conversion or on just enrichment would be subject to whatever statute the limitations governs there. But then you run into discovery rules, and it makes it much easier. It increases the window for the taxpayer to get their money back, if that answers the question. And there's also the possibility, if we would rule in your direction in this case, that the legislature, either with a call by this court to take a look at it or just looking at the case on their own, may come up with another provision. I would think it would probably be done almost immediately because it's not hard to do. Even I can draft a statute that's clear and get it done, I think. The problem was people were not thinking about overpaid taxes. The Ganaway case that we cited in our reply brief that we finally located, we thought that was just very instructive because in the Ganaway case, that's a 1903 case from this court. In that case, the poor property owner got a tax bill, and he paid his taxes. Now, there, that person was paying it out. When our second payment was made, we were not under obligation. This gentleman in Ganaway was under a legal obligation. That means he was subject to the voluntary payment doctrine, which is what this is all about. The voluntary payment doctrine normally prevents me from getting my money back if I paid an obligation and I've got full knowledge about what I'm paying. In Ganaway, the poor guy got a tax bill, and he paid it, and he wanted it back. The treasurer said, no, it's a voluntary payment. You can't have it back. We've taken your money. This court said there was never a tax levy in that case, and there couldn't be a tax bill. This court said in that case, it's not a voluntary payment. The treasurer didn't have any money. I'm sorry, the treasurer did not have authority to accept the money, and therefore the payer was able to get his money back, and that's really our position here. We would like the right to get our money back on the grounds that the treasurer never had any grounds for taking it in the first place, keeping in mind that a treasurer can only take monies that they have a right to take, and they can only disperse monies that they have a right to take. They have no right. As I said before, there's nothing in the rules that allows the treasurer to take and keep this money. It's just there. Ironically, there is no claim of right of possession by the treasurer. All this treasurer is saying is that once I have it a certain period of time, I don't have to give it back. I just don't.  It's also possible that this money should simply be paid on to the state treasurer, which is what some of the other counties do. If the treasurer of Cook County will not give it back and it's on claimed property, by statute it should go to the state treasurer, and there under this Court's Cannell case, it can be obtained back in perpetuity. We're not telling the state treasurer what to do, which is the county's argument. We're just trying to get an order at this point from this Court telling the county treasurer what to do, and that is to turn the money over like the statute said you should. Underneath all of this, I think, is this spirit of, well, this is a great deal of money. It's over a long period of time. What should this mean to the financial status of Cook County? The bottom line is that if you look at the Cook County website, treasurer's website, and we've cited to it someplace in our brief, the amount of monies that are actually taken in, I think, are something like $9 billion. This and the amount at issue here is such an incredibly small percentage of that, and all that's done to correct the problem in some of these cases is to adjust future tax levies and future payments so it's not as if somebody reaches in their pocket and pays it back. The bottom line is they're not reaching into their pockets and giving back something that is theirs to us, they're just giving back to us what has always been ours, and that which was only given to them inadvertently. I'd be remiss if I did not address Dahm, the U.S. Supreme Court case, because that is the case that the appellate court really relied upon in saying that when we're talking about overpayments, we mean all of our payments of any kind. Interestingly enough, in the appellate court briefs, the county never relied upon footnote 6 in Dahm. It was the appellate court that really took it upon itself to interpret that, and our position on that is simply that it is the most extreme dicta because footnote 6 in the Dahm case is a reference back to a dissent. The dissent was far afield from the question of whether or not it was a gift tax or an income tax, which was how the matter first arose with the IRS, and the dissent talked about a difference between taxes wrongly collected because they were wrongfully retained or taxes wrongfully paid. The majority came back with this footnote that talks about overpaid taxes or any taxes paid for tax bills or any reason at all. It's such a throwaway line in a footnote that it would be hard to believe that that court would be addressing what we're talking about here today, which is monies paid inadvertently without a tax bill being present, keeping in mind that the issue in Dahm, that taxpayer had no choice. She opted to pay the wrong tax, but there was a tax obligation due. She happened to think it was a gift tax and she paid the wrong tax, but she had no choice. In our case, there was no tax when we paid the bill. That's the difference between our case and almost all of the other cases, unless there are further questions from the court at this point. Thank you, Mr. Rastak. Mr. Castiglione? Your Honors, good morning. Counsel, may it please the Court, I'm Paul Castiglione and I represent the Cook County treasurer and ex-officio collector, Maria Pappas, in this case. Your Honors, by their own admission, plaintiffs paid their real estate taxes more than five years ago.   claim for a refund is time-barred. Now, before getting into Section 2175 and some of the other issues that came up in plaintiff's argument, I'd like to talk for a minute just about property taxation. It is a creature of the property tax code, and indeed the property tax code controls pretty much all the germane material matters in this lawsuit.  Counsel referred to some of the duties of the treasurer under the county's code. And remember, treasurer wears two hats. She's the treasurer of her county, but she's also the ex-officio collector, and those are two different duties indeed. As a collector, it's her duty to collect tax revenue that comes in and immediately distribute that revenue to the taxing districts. And indeed it is, and I'll discuss this a little more in a moment, it is the taxing districts who really own this money, own tax revenue that comes in. It's not the collector. The collector is merely a conduit. And so when taxes are paid, regardless whether they're paid correctly or in error sometimes, that money goes to the taxing districts. And this Court has recognized over years, over a number of years, that because of the voluntary payment doctrine, taxpayers cannot obtain a refund of real estate taxes paid absent a statutory remedy. As Justice Fitzgerald asked, and I think is quite so, if plaintiffs' view of Section 2175 prevails, these plaintiffs, and in fact all taxpayers who overpay their taxes, won't have a remedy. So that, in fact, the plaintiff's argument really in some sense is a road that leads nowhere. If they're correct, they lose because there's no remedy at all. Mr. Castiglione, is it true that the other counties return the money? Well, plaintiffs have advanced anecdotal allegations that other counties deal with this issue differently. I'd like to address that. There's really three problems with plaintiffs' position. First of all, that the allegations they've made are anecdotal, saying some counties handled this differently than Cook County. There's really no proper allegations in the record to that effect. But regardless of what other collectors do, and the second point I would make is it's a property tax code that has to control, that has to provide the guidelines for how collectors collect taxes and upon proper application for refund, refund taxes. And the third point I would make is that statute of limitations is an affirmative defense. If collectors in other counties elect to waive that defense, it's certainly their right to do so. But the fact that any affirmative defense like statute of limitations can be waived, it's not jurisdictional, it's something a defendant can either rely upon or not. But if other collectors are waiving that affirmative defense, it doesn't mean that any other collector in the state also has to do so. So the fact is, on the state of the record, Your Honor, to answer your question, I'm not sure what other collectors are doing, but I don't think it matters. I think what matters is what the property tax code provides and what defenses it provides and has the property tax code provide a defense that the defendant here has properly relied upon. Mr. Castiglione, what about the straight statutory construction argument made based on the plain reading of the statute? Plaintiff's grammatical reading of the statute? Well, I think when one considers and looks at what it was the legislature was trying to do, when one looks at the title of Section 2175, and the title is refunds for over- make sure I get this right, refunds for erroneous assessments or overpayments. And incidentally, I'd like to note that in plaintiff's reply brief, they state that that is not the title of the statute. That's incorrect. That is the title of the statute. Plaintiffs cited or attached to a reply brief copy of the laws of Illinois for several years, including the 1975 session. I looked up the laws of Illinois from the 88th General Assembly for the 1993 session, and at volume 3, page 3686, they had a recodification of the former chapter 120, paragraph 767, to now 35 ILCS 200, slash 20-175. And the first sentence says right there it's refunds for erroneous assessments or overpayments. So that is the title of the statute. And, Your Honor, I would say that's one thing this Court should look at is the title. I think there's recited case law saying that's appropriate for this Court to do so. I think the title shows where the legislature was going, that they intended to broaden the scope of Section 2175 when they amended the statute in 1975. And clearly the intent was to make the application broader, to include, to provide a remedy for refunds for overpayments. So what I would say is to the subject of the first part of the sentence in 2175 is property. I'm sure I had that right. If any property. So property is a subject. And you read the first part and it talks about erroneous assessments. And then you get to overpaid. Well, property can't be overpaid. I think the only way this statute makes sense is to assume that they're referring to taxes and property taxes. And I think that's appropriate because, after all, the subject of the property tax code is property taxes. And clearly when one looks at the intent of the legislatures, as evidenced by the comments from Senator Moore and Speaker Schlickman that we included in our brief in the legislative history, when one looks at the title and looks at the overall purpose, I think the appropriate reading, grammatical reading, of the statute is the one we propose, the broader one, that would actually provide greater relief to taxpayers than the one plaintiffs are proposing. Now, one thing, I'd like to talk about the Voluntary Payment Doctrine for a moment. I think it's important to remember, inadvertence is not a defense to the Voluntary Payment Doctrine. Duress might be, coercion might be, but inadvertence isn't. And essentially, plaintiffs, the argument they've advanced is that taxes were inadvertently overpaid. But I think it's important to remember that if taxes are overpaid, in a particular instance, they're either overpaid by the taxpayer himself, him or herself, or someone acting on their behalf, a lender, for example, the example that the council used. And I think the question is, is it more fair to, well, the legislature has said is, we're going to give you, the taxpayer, five years to sort this out, to figure it out, and come in and ask for a refund. So is it more fair to say taxpayer and or anyone acting on your behalf, if one of those individuals overpays a tax, you have to figure that out in five years, or is it more fair to put the burden on society as a whole? And that's what plaintiffs are suggesting. And they're saying that you can come in essentially at any time. And the cost of that would be to take any repose that the defendant, well, actually, they're not defendants, but the taxing districts, who ultimately are recipients of tax revenue, they would have no repose. They would have no ability, essentially, to determine how to set a budget. Because they would never know what their liabilities are, if tax refund claims could be made indefinitely into the future. So I think the better reading and the more consistent reading of 2175, in accordance with the Voluntary Payment Doctrine, is that Section 2175 provides relief from the Voluntary Payment Doctrine, but only to the extent that a taxpayer comes in and makes a claim within five years, and makes a claim for either a refund of overpaid taxes or taxes resulting from an erroneous assessment. I'd like to talk about that for a moment, the difference between those two, and how these claims accrue. And overpayment, I think, is sort of self-evident. It would be a case where someone comes in, or more taxes are paid than they're actually billed. And, in fact, the appellate court below discussed that and applied a very, the definition of overpay from the dictionary, which was to pay more, should I quote that right, to pay more than an amount due, or to pay a person in excess. And I think the appellate court applied the right standard for when that claim accrues. It accrues when the taxes are overpaid. In the reply brief, plaintiffs suggest a different accrual rule, which is that a claim such as this would not accrue until a taxpayer came in, made a claim, and was turned down. And the problem with that is that would make statute of limitations infinitely elastic. One could come in 20 years after you overpaid a tax and make a claim, had it be turned down, and under plaintiff's theory, you'd have five more years. That can't be right. And I would point out that under plaintiff's theory, you could have individuals A and B overpay the same tax on the same day, and yet their cause of action would not accrue at the same time. How do you address Mr. Rastak's argument regarding the fact that in this particular case, there's no obligation? Typical overpayment, $5,000 due, pay $5,500, there's an overpayment of $500. He's saying once the first payment, and use the same hypothetical, of that $5,000 is made, obligation over the next $5,000 that comes in is not an overpayment because there's no payment due. It's just there's no obligation. I think the answer to that, Your Honor, lies in the voluntary payment doctrine. It's still a voluntarily paid tax. And the remedy to get a refund of that voluntarily paid tax has to be found in the property tax code. There is no support for the notion that this isn't a tax payment. A tax payment may be overpaid. Does it render it not a tax payment? And I would point out, I would cite in support of that the property tax code itself. 2175 is the title of refunds for overpayments. If overpayments weren't tax payments, why would there need to be a section in the property tax code for overpayments? So it is a tax payment, and it's a voluntary tax payment. And the only, whether there's an obligation or not. So you don't really need a tax due? All you need is the intent that you're making a tax payment? I think so. And if it's an inadvertent tax payment, I think under the voluntary payment doctrine, that doesn't make any difference. I mean, you could overpay a tax. The bill could be $5,000, and you could send a check for $5,500. That's all at the same time, counsel. We're talking about a separate transaction by two different people. One person paid the tax, or a company paid the tax, and then now someone else is paying the same tax. But, Your Honor, the company would be acting as the agent for that person at the same time. And I don't think, and the property tax code doesn't draw any distinction. The obligation to pay the correct amount of the tax was still there. And I think it's important to remember that the collector here issued a tax, a bill for the right amount. And there's no coercion, no duress. If someone and or their agents made a mistake and made two payments or one larger overpayment, the property tax code still has to provide the rules and the procedures for obtaining a refund. Because absent that, going back to a number of cases in this court, going back to Gill and other cases we've cited, there would be no remedy. And there still is an obligation. The fact that there may have been a mistake or an inadvertent payment to satisfy that obligation I don't think changes the analysis. I want to talk for a moment about the notion, something counsel said in his argument, that the treasurer in his view, an accountant in plaintiff's view, takes the position that after five years a collector keeps the money. But I want to point out once again, that is not the law. This tax revenue is not the property of the collector and it's not the property of Cook County. Again, she may be the Cook County treasurer, but she's also the ex-officio collector with duties to the taxing districts. And under both section 2140 of the property tax code, which mandates that the collector distribute all tax revenue as received to the taxing districts, and section 2145, which penalizes a collector for not doing so if he or she does not, this court in the Wooddale case has made it clear that the tax revenues that come in do belong to the taxing districts. And again, all that the collector does is act as a conduit and follow the property tax code. And that includes the processing of refunds, which means that, again, the rule is set forth. You have to come in in five years. It's her obligation if someone does so and she's satisfied with the facts of the case, she'll issue a refund. If she's not satisfied with the facts of the case, the statute provides for a review in the circuit court and ultimately in the appellate court. In their opening brief, plaintiffs cited, maybe advance the argument that tax overpayments are unclaimed property. That is not correct. Clearly, and they also cite the Estrays and Lost Property Act. Neither of those statutes have any application to the situation as the appellate court below held. In both situations, the Unclaimed Property Act or the Estrays and Lost Property Act, those deal with situations where ownership of property never changes hands. And clearly, that's not the case here. When one pays their taxes, they write a check or give some tender, some currency to the collector, and property does change hands and money is paid to the government. Not to say that money can't be refunded where appropriate, but to suggest that property did not change hands is just not the law. It's not right. Not a correct statement of the law, I should say. So the notion that the Unclaimed Property Act is in the application or the appellate court rejected that, and we'd ask this court to reject that. Unclaimed property may deal with situations, will definitely deal with situations where properties that's held by a bank and that belongs to a certain owner, not claimed for a number of years, that is in this situation. What governs this situation is a property tax code. We're talking about tax payments, albeit tax payments made in error. But it's a property tax code ultimately which governs, and the appellate court below held that and we'd ask that this court do so as well. I mentioned a moment ago about when claims for overpayments accrued. Even though it's not an issue particularly in this suit, just to kind of explain how we think 2175 works, I'd like to talk about refunds based on erroneous assessments briefly. That situation could arise, would arise, Your Honors, when say a taxpayer doesn't take an exemption that they're entitled to, a senior exemption perhaps or a homestead exemption, and of course the assessment of their property is not correct. There are procedures under the property tax code to go in and seek a correction of that assessment. The assessor can file a certificate of error, for example. Well, in those instances were that to take place, were an assessment to be corrected, a claim for a refund of taxes paid before on what was seemingly the correct assessment, at that point the claim would accrue upon the correction of the assessment. And I think that is consistent with the finding below of the appellate court that claims for overpaid taxes accrue upon payment, and that really what the court below did was follow this court's decision in Sundance Homes and, as counsel indicated before, the Dahm case. We did cite Sundance Homes in our brief below in our brief to this court. In Sundance Homes, this court relied upon Dahm. I think it was perfectly appropriate for the appellate court to do so, and I think Dahm and Sundance Homes both provide very, both have a, set forth a straightforward holding that refund claims accrue upon overpayment. As counsel actually referred to, it is true that they brought common law and constitutional claims, and as we stated before under Gill and other cases in this court, there is no common law or constitutional claim for a refund. But I would point out that the statutes of limitations of those claims are less than five years, and actually 2175 has a longer statute of limitations, and even under the claims they attempted to bring, there is no, the claims would be time barred. Plaintiffs, Your Honors, we would also believe, lack standing to bring claims regarding the Unclaimed Property Act and on behalf of state pensioners. In essence, plaintiffs are asking to stand in the shoes of the state treasurer with regard to making claims for unclaimed property vis-à-vis the Cook County collector, the treasurer and collector. They certainly don't, we believe, don't have standing to do so, and we believe the Constitution, as we cited in the Fairbank case, would prohibit plaintiffs from being able to do that. Plaintiffs also ask for injunction and declaratory relief. We cited the National Private Truck Council case. We don't believe that that relief is available under Section 1983 as construed by the Supreme Court, and also in Illinois, equitable jurisdiction is barred for tax relief when there is inadequate remedy at law. We cited the Clarendon Associates case for that, and we would stand by those arguments. I'm going to address just a couple of points. Plaintiffs discussed the Ganaway case and cited in the reply brief. That case had to do with the appropriateness of a levy. If a tax levy fails, or if there is no levy, then the tax fails, and in that case there was no proper levy. So that doesn't really support the claim that if a tax is overpaid, that automatically the tax is refunded as the discharge of a proper obligation. That simply is not the law. What is the law is that a tax payment, even if an error, is a voluntarily paid tax, and there has to be a way of circumventing the voluntary payment doctrine, which, as we've stated, is following the procedures of 2175. Plaintiffs also cited Section 2160 of the property tax code. That argument is also sort of a red herring, I think. 2160 deals with a situation where you have a county of accelerated billing, and you have a situation where the first installment payment of the following year is half of the tax paid in the previous year. Well, what happens if, say, for example, a tax was $5,000 on a piece of property, which burns down? Well, now the property is zero, value is zero, but you still get charged with half of the tax. You still start at $2,500 for the tax you paid the previous year. But 2160 provides a remedy for that. But it certainly doesn't provide a remedy for the larger situations where a tax is overpaid, but, you know, the value has not been entirely eliminated. Your Honors, I see my time is up. I would ask that this Court affirm the decisions of the circuit and appellate courts. Thank you, Mr. Diglione. Mr. Ressa? Thank you, Your Honor. One of the key words I heard counsel use was tax revenue, and that's really our point. These were not tax revenues. Tax revenues occur where there has to be an assessment, where somebody is handed in a budget where there's been a levy. These cannot be tax revenues. Nobody counted on these monies. Nobody could possibly have expected them. Not one of the 1,700 taxing districts in Cook County sits down and says, you know, every year we get about an extra 5% because people make mistakes. This is not something that's a tax revenue. And it's important because we're talking about tax payments. When we're talking about overpayment, we're not just talking about overpayment in the sense that we use in the everyday world. We're talking about a very codified situation. And the statutes have always been drafted to protect or not to protect. The statutes have actually been drafted to make sure the money does not usually get back. They have to craft an exception for tax revenues, and they've always been concerned about protecting tax revenues because I think it's in Dom, they cite Bull, and Bull says tax revenues are the lifeblood of the community, of the government. These are not lifeblood. These are not revenues. And because they're not revenues, they're not tax payments, we get into the voluntary payment doctrine. And we've cited cases in our brief, Geary and Era. A voluntary payment occurs where there's an actual basis for the recipient's claim of entitlement, and that wasn't the case here. The treasurer knows that the bill was paid, and the payer has to have knowledge about the source of the claim, to put it in English, so that as I pay the bill there's got to be some reason for me to think I have to pay it. And in this case... Wouldn't that be the case here when they paid it in response to a tax bill? The first time they paid it, yes. The second time, no. The second time, and that's my point, the second part of the premise is that the taxpayer has to know, basically has to know that the person to whom they're, the taxpayer has to know that the governmental entity to whom they're writing the bill has a right to the bill. In this case, the payers thought the person getting the money had a right to it, but they did not, because neither payer knew the other had already paid. So there were tax payments when they... Well, when do you determine when it is? Exactly. Is it a tax payment? I'm sorry, I'm going to cut you off, because I've rolled my eyes at myself as I've tried to make sense of how to say this. As I write it, I think it's a tax payment, but I'm wrong. So... Even that's not true, because you don't know which of the two payments came first. Certainly the first payment, if it was the taxpayer, would be a tax pay. If they beat the bank to the punch. If they beat the bank to the punch. And the one we want back is the second payment. We know that the second payment was... Whoever wrote the second payment thought it was a tax payment, and it just clearly was not, because there was nothing to pay. Counsel, and this kind of fits into counsel's statement that if we have this... How could we do that? How would we draft an order that said it goes to the first payment, but we don't know who the first payment is? Is there a little factual dispute in this case? That would lead to my point. When the treasurer gets the payment under 20-40, I hope I have that section right, the treasurer enters it into the warrant book. It's a payment. The treasurer doesn't have to discover the second payment. They don't have to look through a whole office to find out. When that second payment comes in, it comes in for a PIN number, a property identification number. When the treasurer gets a second payment on behalf of that same property owner, they know that it's already been paid. When they go to record it, the PIN's going to show that it's been paid. And, therefore, at that moment, the treasurer knows that that was a mistake, that it wasn't tax revenue, that the treasurer knows that he or she has no right to keep that money because they know it wasn't payment of a tax bill. Counsel, theoretically, though, it is the plaintiff's money anyway. They're paying the mortgage company. Correct. Yes, it is. So it's their money one way or the other. Exactly. And I will quibble with that. And counsel did raise it. Let's assume I make the mistake. It would be hard for me to do, but let's assume I write the property tax bill, and then my wife writes the property tax bill because she doesn't know I've written it because we use different checkbooks. Nonetheless, when that second check comes in, even though my wife thought she was paying a tax obligation, it wasn't a tax obligation anymore. At least when it got to the desk of the treasurer, it clearly can't be a tax obligation because it's been paid. Then it's her money. Well, then what's the difference? My wife is in the audience. I will not quarrel with that. Well, then what's the difference between what you're describing and a tax overpayment? Tax overpayments occur because, counsel mentioned, it's because there's a wrongful assessment, an overassessment. Only in that instance. A levy that's been improper. There's a huge body of litigation over improper levies. When a tax levy is put out, it has to be done on time. It has to follow various parameters. When those are wrong, the tax becomes illegal. What if the DuPage case, the tax impact fees, they're unconstitutional. Those are tax overpayments in the sense that they probably should never have been paid, but those were all payments that were made because when the money went in and when the money was received, there was a legal duty to do it. People relied upon them. This is the one instance where it was completely inadvertent, and inadvertent in the sense that there really wasn't a tax being paid because it had already been paid. I'm afraid I cannot say it much differently than that, and I thank the Court for its attention. Unless there's some further questions, I simply ask that they be reversed and be remanded so we can pursue the many factual discrepancies that still remain. Thank you, Mr. Rastak, and thank you, Mr. Castiglione. Case number 104-922, Santos Alvarez et al. v. Maria Pappas is taken under advisement as agenda number 14.